UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CARLOS CHIRINOS CHIRINOS,     )
                )
     Petitioner,         )     Civil Action No. 3:25-CV-789-CHB
                )
v.                 )
                )     **MEMORANDUM OPINION AND**
JIM TINDELL, et al.,       )     **ORDER**
                )
     Respondents.     )
                )

*** *** *** ***

This matter is before the Court on Carlos Chirinos Chirinos's Petition for Writ of Habeas Corpus, [R. 1], filed December 18, 2025. Petitioner alleges that the respondents—which include Jeff Tindell, Jailer of the Oldham County Detention Center; Todd M. Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); and Pam Bondi, United States Attorney General—have detained him in violation of the Immigration and Nationality Act ( "INA") and the Fifth Amendment's Due Process Clause. [R. 1, pp. 8–9]. The Court issued an Order to Show Cause on December 19, 2025, setting an evidentiary hearing date and establishing a briefing schedule for the parties. [R. 3]. Respondents filed a response. [R. 5]. The parties then filed a Joint Motion to Revise Briefing Schedule, in which the parties agreed to extend Petitioner's time to file a reply brief. [R. 6, p. 1]. They further agreed that the evidentiary hearing "may be waived in this matter, and the Parties submit for decision on the briefs." *Id.* at 2. The Court granted that motion, [R. 7]. Petitioner then filed his reply brief. [R. 9]. The Court also allowed either party to request an evidentiary hearing if it became necessary after briefing. [R. 7]. The deadline for requesting an evidentiary hearing has now passed, and neither party has requested such a hearing. However, at the Court's request, the

-1-

parties filed supplemental briefing. [R. 12]; [R. 17]; [R. 18]. This matter is therefore ripe for review. For the following reasons, the court will deny Petitioner's Petition for Writ of Habeas Corpus, [R. 1].

### I.      BACKGROUND

Petitioner Carlos Chirinos Chirinos is a thirty-six year old citizen of Venezuela. [R. 1, p. 4]; [R. 1-1 (stating birth date)].  On October 4, 2023, he entered the United States and applied for admission at the port of entry in Hidalgo, Texas. [R. 1, p. 4]; [R. 1-1 (stating most recent date of entry was October 4, 2023)]. He was ultimately lawfully paroled into the United States and was provided with an I-94 form indicating that he was "admit[t]ed until" October 2, 2025. [R. 1, p. 5]; [R. 1-1 (printout of an online search for Petitioner's I-94 status)] [1]; *see also* 8 C.F.R. § 235.1(h)(2) ("Any alien paroled into the United States under section 212(d)(5) of the Act, including any alien crewmember, shall be issued a completely executed Form I–94, endorsed with the parole stamp."). The I-94 form indicates that his "Class of Admission" is "DT," indicating his parole status.[2]

Also on October 4, 2023, Petitioner was provided with a Notice to Appear. [R. 1, p. 5]; [R. 1-2 (Notice to Appear)]. The notice identified Petitioner as an "arriving alien," not as "an alien

---

[1] In his supplemental brief, Petitioner provides a different printout of his I-94 status from a more recent online search, which indicates he was admitted until April 18, 2025. [R. 18-2]. The Court notes that Petitioner initially made an appointment at the port-of-entry through the Customs and Border Protection mobile application. [R. 1, p. 1]. In prior administrations, this was "the primary, if not exclusive, mechanism to seek parole and/or asylum at the southwest border." *Coalition for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 66 (D.D.C. Aug. 1, 2025), *appeal docketed*, No. 25-5289 (D.C. Cir. Aug. 11, 2025) (citations omitted). The current administration later terminated all grants of parole that had been authorized through the application in April 2025. *Id.* (citations omitted). It is unclear if that decision affected Petitioner's parole, however. In any case, the parties agree that, regardless of whether Petitioner's "admitted until" date was April 18, 2025 or October 2, 2025, their arguments remain the same. [R. 17, p. 9 n.1]; [R. 18, p. 4 n.7]. Likewise, the Court's analysis remains unaffected by this discrepancy, as explained herein.

[2] This information can be found on the United States Citizenship and Immigration Services Website. *See* FAQs on the Effect of Changes to Parole and Temporary Protected Status (TPS) for SAVE Agencies, https://www.uscis.gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies (under "Non-Categorical Parole" heading, select "What does 'Non-Categorical Parole' mean?") (last visited April 3, 2026) (explaining that the Class of Admission for paroled aliens is often "'DT' though other parole related [Classes of Admission] may have been used.").

present in the United States who has not been admitted or paroled" or a person who has "been admitted to the United States, but [is] removable." [R. 1-2, p. 1]. The notice further explained that Petitioner was subject to removal under the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I),[3] "as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document" and other necessary documents, like a valid passport. [R. 1-2, p. 4]. It further ordered Petitioner to appear before an immigration judge on July 23, 2024. *Id.* at 1. That hearing was ultimately rescheduled to July 11, 2025. [R. 1, p. 5]; [R. 1-4]. On July 11, 2025, Petitioner appeared before the Memphis Immigration Court for his first court appearance, and his case was continued again, this time until March 31, 2026. [R. 18-1].

Meanwhile, Petitioner obtained an Employment Authorization Document allowing him to lawfully work in the United States until October 2, 2025. [R. 1, p. 5]; [R. 1-3]. He also filed an application for asylum on October 1, 2024. [R. 1, p. 5]; [R. 9-2]. He was ultimately granted a second work permit, which authorizes him to work in the United States until June 4, 2030, so long as his asylum application is pending. [R. 9, p. 2]; [R. 9-3]. Petitioner represents that his asylum application remains pending and is set for a merits hearing on April 8, 2026. [R. 1, p. 5]; [R. 18, p. 5]; R. 18-3].

On November 8, 2025, Petitioner was arrested during a traffic stop in Floyd County, Indiana. *Id.* Petitioner concedes that at the time he was arrested, his parole had expired.[4] *See* [R. 1-

---

[3] The NTA cites to "212(a)(7)(A)(i)(I) of the Immigration and Nationality Act." [R. 1-2, p. 4]. The Court will instead use U.S.C. citations throughout for uniformity.

[4] While Petitioner concedes that his parole expired (and therefore automatically terminated), he also notes that he "never received any notice of any early termination of his parole." [R. 18, p. 4]. However, under 8 U.S.C. § 212.5, a noncitizen's parole status "shall be automatically terminated without written notice" if he or she departs from the United States or, if not departed, "at the expiration of the time for which parole was authorized." 8 U.S.C. § 212.5(e)(1). In the latter case, the noncitizen "shall be restored to the status that he or she had at the time of parole," and no written notice is required. *Id.*; *see also id.* § 212.5(e)(2)(i). Regardless, neither Petitioner's INA violation claim

1 (stating that Petitioner was "admit[t]ed until" October 2, 2025)]; [R. 18, p. 4 n.7] 8 U.S.C. § 212.5(e)(1) (explaining that a noncitizen's parole status "shall be automatically terminated without written notice" if he or she departs from the United States or, if not departed, "at the expiration of the time for which parole was authorized"). On November 19, 2025, Petitioner pleaded guilty to operating a motor vehicle while intoxicated and was released from state custody. *Id.* However, ICE agents immediately detained Petitioner, and he was transferred to Oldham County Detention Center on November 20, 2025. *Id.* at 6; [R. 5, p. 2]; [R. 9-3].

In his petition, Petitioner claims that he was detained by ICE without a warrant. *See, e.g.*, [R. 1, p. 6]. However, Respondents represent that Petitioner was served with a Form I-200, or Warrant for Arrest of Alien. [R. 5, p. 2]. Respondents attach this warrant to their response brief. [R. 5-1]. The warrant explains that the arresting immigration officer determined that there is probable cause to believe that Petitioner is removable from the United States, based on "the pendency of ongoing removal proceedings against the subject." [R. 5-1]. It further states that it was served on Petitioner on November 20, 2025 and was read to him in Spanish. *Id.* In his reply brief, Petitioner does not dispute that he was served with the warrant on that date. [R. 9, p. 3 ("According to documentation provided by the [r]espondents, DHS served a Form I-200 Warrant for Arrest of Alien on November 20, 2025.")].

On December 11, 2025, Petitioner requested a bond redetermination pursuant to 8 C.F.R. § 1236, and a hearing was set for December 17, 2025. *Id.*; [R. 1-5]; [R. 9-4]; [R. 9-5]. Petitioner represents that the hearing lasted seven minutes, and the DHS argued only that the immigration judge lacked jurisdiction to consider bond and did not argue (or present evidence) regarding Petitioner's status as a danger to the public or flight risk. [R. 9, pp. 3–4].

---

or his due process claim appear to be in any way related to notice, or lack thereof, relating to his parole's termination or expiration.

The immigration judge denied Petitioner's request for a change of custody status. [R. 1-5, p. 1]. The immigration judge's order explained that the court had "no jurisdiction to consider bond requests from aliens who have been designated as arriving aliens," citing 8 C.F.R. § 1003.19(h)(2)(i)(B). [R. 1-5, p. 1]. That provision prohibits immigration judges from "redetermin[ing] conditions of custody imposed by [the Immigration and Naturalization Service] with respect to" certain classes of aliens, including "[a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to [8 U.S.C. § 1182(d)(5)(A)]." 8 C.F.R. § 1003.19(h)(2)(i)(B). "In the alternative," the immigration judge explained, "this Court lacks authority to hear bond requests or to grant bond to aliens who are present in the United States without admission," citing 8 U.S.C. § 1225(b)(2)(A). *Id.* The immigration judge made additional alternative findings, in the event that "a reviewing body find that the Court has authority and/or jurisdiction to hear this bond request," finding Petitioner to be both dangerous and a flight risk. *Id.* at 1–2.

The following day, December 18, 2025, Petitioner filed his Petition for Writ of Habeas Corpus in this Court. [R. 1]. In Count One, he alleges that Respondents violated the Fifth Amendment's Due Process Clause because he "has received no due process and has not been afforded any adequate procedural protections." *Id.* at 8. More specifically, Petitioner alleges that he "was unlawfully detained without any legal basis and no warrant," and he "continues to be held without a full and fair bond hearing before a neutral arbiter." *Id.* As explained above, the Court understands that Petitioner concedes that he was served with an arrest warrant when taken into ICE custody, and that he no longer bases his due process claim on that specific ground.

As for Count Two, Petitioner alleges that the Respondents unlawfully detained him in violation of the INA. *Id.* at 8–9. He alleges that the United States "is misclassifying him as being

subject to mandatory detention under [8 U.S.C. § 1225(b)], denying him the opportunity to a full and fair bond hearing." *Id.* at 2. He asserts that he is properly detained under 8 U.S.C. § 1226(a), and as a result, he must be afforded an opportunity for a bond hearing and redetermination. *Id.* at 9. Moreover, because he has been denied "a full and fair bond hearing before a *neutral* arbiter, he has no opportunity to demonstrate that he is not a danger or flight risk." *Id.* (emphasis in original).

As noted above, the Court issued an Order to Show Cause on December 19, 2025, setting an evidentiary hearing date and establishing a briefing schedule for the parties. [R. 3]. Respondents filed a response. [R. 5]. Respondents assert that (1) Petitioner is detained under § 1225(b)(2) as an "arriving alien," which is a subset of "applicant for admission," and he is therefore not entitled to a bond hearing, *id.* at 4–6; (2) regardless, even if Petitioner is detained under § 1226, he should still be detained because the immigration judge ruled, in the alternative, that he was a danger to the public and a flight risk, *id.* at 6; (3) Petitioner should be required to exhaust his administrative remedies, namely, an appeal of the immigration judge's decision, *id.* at 6–9; and (4) § 1226(e) prohibits judicial review of an immigration judge's "discretionary judgment" regarding the application of § 1226. *Id.* at 9–10.

After Respondents filed their response brief, the parties agreed to extend Petitioner's time to file a reply brief and further agreed to waive an evidentiary hearing. [R. 6]. Petitioner has since filed his reply brief, [R. 9], and neither party has requested an evidentiary hearing based on the briefing. *See* [R. 7].

Upon reviewing the parties' briefing, the Court determined that both parties "largely glossed over certain facts, statutory provisions, and regulations which may prove relevant in this matter." [R. 12, p. 3]. The Court therefore entered an order for supplemental briefing, directing the parties to address the effect of Petitioner's prior parole and certain regulations related to

Petitioner's status as an arriving alien. *See id.* 3–5. The parties have since filed their supplemental briefs. [R. 17]; [R. 18]. This matter is therefore ripe for review.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241, a writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Thus, federal courts may "issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). The right to petition for a writ of habeas corpus is "'available to every individual detained within the United States,'" *Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 WL 32076, at *1 (W.D. Mich. Jan. 6, 2026) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)), including "non-citizens in immigration-related matters." *Id.* (citations omitted).

The petitioner seeking habeas relief bears the burden of proving by a preponderance of the evidence that his detention was unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022) (citation omitted).

## III.   ANALYSIS

### A.  Jurisdiction

The Court first considers Respondents' argument that 8 U.S.C. § 1226(e) deprives this Court of the ability to reconsider an immigration judge's discretionary decision. [R. 5, pp. 9–10]; [R. 17, p. 11].  That provision states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the

revocation or denial of bond or parole." 8 U.S.C. § 1226(e). The Supreme Court has explained that this provision prevents an alien from "challeng[ing] a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)). However, the Supreme Court has also recognized that district courts retain jurisdiction to hear habeas petitions concerning issues that are collateral or ancillary to removal proceedings. *Jennings*, 583 U.S. at 295 ("Section 1226(e) does not preclude challenges to the statutory framework that permits [an] alien's detention without bail." (quotations omitted) (citing *Demore*, 538 U.S. at 517)). Moreover, habeas relief is available under 28 U.S.C. § 2241where a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This provision therefore confers jurisdiction on federal courts to review noncitizens' claims challenging the constitutionality of their detention during the pendency of removal proceedings. *See Demore*, 538 U.S. at 517 ("Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail."); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2002) ("[A]lthough the Attorney General's 'discretionary judgment . . . shall not be subject to review,' claims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'" (quoting *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002))).

Because Petitioner challenges the statutory and constitutional validity of his continued detention, the Court finds that it has jurisdiction to consider Petitioner's claims.

### B. Exhaustion

The Court next considers Respondents' argument that Petitioner should be required to

exhaust his administrative remedies and appeal the immigration judge's decision. [R. 5, pp. 6–9].

Exhaustion is an administrative law doctrine whereby litigants who receive adverse decisions by administrative agencies typically must pursue administrative remedies before seeking judicial relief. *See Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). "[T]he Supreme Court has identified three categories of statutory schemes when deciding if a specific statute" requires exhaustion. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citing *Sims v. Apfel*, 530 U.S. 103, 107–110 (2000)). First, statutes expressly require exhaustion in their statutory text.[5] *Id.* (citing *Sims*, 530 U.S. at 107). Second, statutes may be silent as to exhaustion, but nevertheless "permit agencies to adopt regulations detailing their internal claims-processing rules." *Id.* at 747 (citing *Sims*, 530 U.S. at 108). And third, where "neither statute nor regulation says anything about exhaustion, the Supreme Court has held that a court may still impose an *implied* exhaustion rule as long as the rule comports with the statutory scheme." *Id.* (citing *Sims*, 530 U.S. at 108–10). Under this third doctrine of "prudential exhaustion," the Sixth Circuit has stated that it is within the Court's "sound judicial discretion" whether to require exhaustion "[w]hen Congress has not clearly required exhaustion." *Id.*; *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).

Although the Sixth Circuit has not adopted a formal test for when prudential exhaustion is warranted, many trial courts from the Sixth Circuit borrow from the Ninth Circuit's test, articulated in *United States v. California Care Corp.*, whereby courts may require prudential exhaustion when:

---

[5] As examples, the Sixth Circuit in *Island Creek Coal* cites to the Mine Act, 30 U.S.C. § 816(a)(1), which states that "[n]o objection that has not been urged before the [Federal Mine Safety and Health Review] Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances," and to 42 U.S.C. § 1997e(a), which merely requires "administrative remedies" to be "exhausted." 937 F.3d at 746–47.

(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

(2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

709 F.3d 1241, 1248 (9th Cir. 1983); *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (applying the *California Care* factors); *see also, e.g., Singh v. Lewis et al.*, No. 4:25-CV-96-RGJ, 2025 WL 2699219 (W.D. Ky. Sep. 22, 2025); *Hernandez Torrealba v. United States Dep't of Homeland Security*, No. 1:25-CV-1621, 2025 WL 2444114 (N.D. Ohio Aug. 25, 2025). Alternatively, too, a court can choose to waive exhaustion when the "legal question is fit for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49 (1967)).

In the present case, the parties do not direct the Court toward any statute or regulation that would require administrative exhaustion under these circumstances, nor is the Court aware of any such statute or regulation.[6] *See generally* [R. 13; R. 16]. Instead, Respondents appear to rely only on the prudential exhaustion doctrine. [R. 5, pp. 6–9]. The Court therefore considers whether prudential exhaustion applies in this case. *See Singh*, 2025 WL 2699219, at *2–3 (discussing prudential exhaustion).

The Court here notes, as did Judge Jennings from this district, that "[t]he Sixth Circuit has not adopted any formal test [for applying prudential exhaustion], but instead, many trial courts within the Sixth Circuit borrow the Ninth Circuit test from [*California Care*]." *Id.* at *2; *see Rabi*

---

[6] The Court notes that 8 U.S.C. § 1252(d), while not cited by the parties, provides in relevant part that "[a] court may review a final order of removal only if — (A) the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d). Here, there does not appear to be a "final order of removal" at this time. Even if Petitioner has a final order of removal, he does not here ask the Court to review it. Thus, the Court presumes that § 1252(d) does not presently apply to these proceedings.

*v. Sessions*, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018) (citing *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011)). This Court will therefore do the same.

Applying the *California Care* factors to this case, the Court finds that all factors weigh against requiring prudential exhaustion. Regarding the first factor, because the central issue here is whether Petitioner may be detained under Section 1225 or Section 1226 of the INA—a purely legal question of statutory interpretation—agency expertise is not required "to generate a proper record and reach a proper decision." *California Care*, 729 F.2d at 1248; *see Singh*, 2025 WL 2699219, at *2; *Pizarro Reyes*, 2025 WL 2609425, at *3; *Lopez-Campos*, No. 2:25-CV-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Moreover, the Supreme Court in *Loper Bright Enterprises v. Raimondo* recently affirmed that "the judiciary is the final authority on issues of statutory construction." 603 U.S. 369, 401 (2024). Regardless, this Court is not bound by and need not defer to agency interpretations of statutes. *See id.* ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."); *Singh*, 2025 WL 2699219, at *2 ("[T]his Court is not bound, or deferential to any agency interpretation of a statute."); *Pizarro Reyes*, 2025 WL 2609425, at *6 ("[T]he Court here is not bound by the [Board of Immigration Appeal]'s interpretation of § 1225(b)(2)(A)." (citing *Loper Bright*, 603 U.S. at 413)).

Turning to the second factor, because Petitioner alleges a constitutional violation of due process in his habeas petition, this court need not wait for ICE's appeal to an administrative review board—here, to the Board of Immigration Appeals ("BIA")—in order to reach the merits. The Sixth Circuit has held that because the BIA cannot review constitutional challenges, due process challenges typically do not require exhaustion. *Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006) *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("[E]xhaustion of

administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted); *see also Singh*, 2025 WL 2699219, at *2; *Lopez-Campos*, 2025 WL 2496379, at *5.

Finally, as to the third factor, Respondents have repeatedly maintained their position that Section 1225 of the INA applies to Petitioner, not Section 1226. *See* [R. 5, pp. 4–6]; [R. 9, p. 3 (explaining that DHS argued to the immigration judge that the immigration court lacked jurisdiction to hear bond)]. It is far from clear that any administrative review would result in Respondents changing their position and thereby "preclud[ing] the need for judicial review." *California Care*, 709 F.2d at 1248; *see Singh*, 2025 WL 2699219, at *2. Thus, taken together, the Court finds that prudential exhaustion is not required under the *California Care* factors.

In the alternative, the Court also finds that exhaustion should be waived because the "legal question" at issue "is fit for resolution and delay means hardship." *Shalala*, 529 U.S. at 13. Other courts have noted that "[b]ond appeals before the BIA, on average, take six months to complete." *Lopez-Campos*, 2025 WL 2496379 at *5 (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025)); *see also Singh*, 2025 WL 2699219, at *3.

Moreover, as other courts across the country have recognized, the "delays inherent" in the BIA's administrative process "would result in the very harm that the bond hearing was designed to prevent," as it would cause Petitioner's prolonged detention without due process. *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation omitted); *see also Gomes v. Hyde*, No. 1:25-CV-11571, 2025 WL 1869299, at *5 (D. Mass. July 7, 2025) (finding the "prolonged loss of liberty" from "several additional months" in possibly unlawful detention would "constitute irreparable harm"). Unnecessary detention also harms Petitioner's ability to gather evidence and prepare his case against deportation. *See Rodriguez*, 779 F. Supp. 3d at 1254. Other

courts within this district and across the country have waived exhaustion under similar circumstances. *See, e.g., Singh*, 2025 WL 2699219, at *3. (finding that waiver of exhaustion is proper where hardship would result from the petitioner's continued detention); *Lopez-Campos*, 2025 WL 2496379, at *5 ("Because exhaustion would be futile and unable to provide Lopez-Campos with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition."); *Pizarro Reyes*, 2025 WL 2609425, at *4 ("If the Court requires administrative exhaustion, Pizarro Reyes faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his removal. As a result, the Court will waive administrative exhaustion."); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924, at *6–7 (D. Mass. Sep. 9, 2025) (holding that because "the policy concerns animating the common-law exhaustion" are absent, "waiver of exhaustion is warranted").

The Court can presently decide whether Petitioner is subject to mandatory detention under § 1225 of the INA, or is instead only detainable pursuant to § 1226. Should the Court decide that § 1226 controls, Petitioner could be released within days of that determination, as opposed to the expected six-month-or-more potential period for the BIA to resolve an appeal. Therefore, where, as here, the Court can resolve the question of statutory interpretation presently before it, the Court concludes that unnecessary hardship would result from prolonging Petitioner's detention. The Court will thus waive any prudential exhaustion requirement for Petitioner and reach the merits of his petition.

### C.  Petitioner's INA Violation Claim (Count Two)

Petitioner raises two claims in support of his habeas petition. First, he claims that he is being unlawfully detained without due process of law, in violation of the Fifth Amendment. [R. 1,

p. 8]. Second, he claims that he is being unlawfully detained in violation of the INA because he has been improperly classified as subject to mandatory detention under 8 U.S.C. § 1225. [R. 1, pp. 8–9]. Because the analysis of his first claim is potentially affected by the outcome of his second claim, the Court begins with Petitioner's INA violation claim.

### 1.  Statutory and Regulatory Framework

To resolve Petitioner's INA violation claim, the Court must determine which provision of the INA applies to Petitioner: § 1225 or § 1226. "Both statutes generally govern detention of noncitizens pending removal proceedings." *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *2 (W.D. Ky. Sept. 19, 2025). However, while § 1255 focuses on mandatory detention provisions, § 1226 focuses on discretionary detentions. *Id.*

Section 1225 provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). If a noncitizen meets this definition, he or she qualifies as an applicant for admission "whether or not [he or she arrived] at a designated port of arrival." *Id.* Applicants for admission or aliens who are "otherwise seeking admission" must be inspected by immigration officials. *Id.* § 1225(a)(3). Under § 1225(b)(2), subject to certain exceptions, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a [removal] proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A) (emphasis added). This provision "does not include any exception that permits the government to release detained aliens on bond." *Buentrostro-Mendez v. Bondi*, 166 F.4th 494, 499 (5th Cir. Feb. 6, 2026).

Because this provision is mandatory, an alien detained under § 1225(b)(2)(A) may be released only if he is paroled "for urgent humanitarian reasons or significant public health."

-14-

*Barrera*, 2025 WL 2690565, at *2 (citation omitted); *see also* 8 U.S.C. § 1182(d)(5)(A). This parole "permits a noncitizen to physically enter the country . . . subject to a reservation of rights by the [g]overnment that it may continue to treat the noncitizen 'as if stopped at the border.'" *Walizada v. Trump*, No. 2:25-cv-00768, 2025 WL 3551972, at *6 (D. Vt. Dec. 11, 2025) (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025)). "Such parole, however, 'shall not be regarded as an admission of the alien.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)). Instead, when parole terminates, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A); *see also Walizada*, 2025 WL 3551972, at *6.

By contrast, § 1226(a) is less specific than § 1225, addressing the "[a]pprehension and detention of aliens" generally rather than "applicants for admission" or "alien[s] seeking admission" specifically. *Cf.* §§ 1226, 1225(b)(2)(A); *see also Buenrostro-Mendez*, 166 F.4th at 499 (explaining that § 1226 "also contains provisions applicable to aliens in general, including those who are not applicants for admission"). It provides that "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). This "creates a discretionary framework for noncitizens arrested and detained based upon 'a warrant issued by the Attorney General.'" *Barrera*, 2025 WL 2690565, at *2 (quoting 8 U.S.C. § 1226(a)). Under this discretionary framework, the Attorney General "may continue to detain the arrested alien," "may release the alien" on bond of at least $1,500 or "may release the alien" on conditional parole. *Id.* (quoting 8 U.S.C. § 1226(a)). The arresting immigration officer makes the initial custody

determination, but the alien can appeal that determination through a bond hearing before an immigration judge. *See id.* (citing 8 C.F.R. §§ 1236.1(c)(8), (d)(1)).

To summarize, an alien who falls within the scope of § 1225 cannot be released on bond, *id.* § 1225(b)(2)(A), while an alien who falls within the scope of § 1226 may be released on bond. *Id.* § 1226(a).

### 2.  The Parties' Positions

The Court first attempts to clarify the parties' arguments relating to these statutory provisions. For his part, Petitioner admits that, on October 4, 2023, he arrived at a port-of-entry and "applied for admission into the United States." [R.1, p. 1]; *see also* [R. 1, p. 4]; [R. 18, p. 2]. The Court therefore understands that Petitioner does not dispute that, on that date, he was an applicant for admission, or one "who has not been admitted or who arrives in the United States," 8 U.S.C. § 1225(a)(1), and he was actively seeking admission. Petitioner also concedes that he was initially detained, inspected, deemed inadmissible, and placed in non-expedited removal proceedings pursuant to § 1225(b)(2). *See, e.g.*, [R. 18, p. 2]. Petitioner also acknowledges that "he was designated an arriving alien" when he first applied for admission on October 4, 2023. [R. 18, p. 7]. Petitioner's Notice to Appear likewise confirms that he was identified as an "arriving alien." [R. 1-2, p. 1]. That term is not defined in the INA. However, the INA's implementing regulations define "arriving alien" as "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2.

Thus, Petitioner concedes that, at the time he entered the United States on October 4, 2023, he was subject to the provisions of § 1225(b)(2), including mandatory detention, and he was an "arriving alien" at that time. Nevertheless, Petitioner argues that § 1225's detention authority must be "exercised at or near the port of entry," but he was arrested in the interior of the United States

on November 8, 2025, approximately two years after first entering the country, meaning his detention is governed by § 1226. [R. 9, p. 7]. Thus, from the best the Court can tell, he argues that he is *no longer* an applicant for admission or arriving alien, and as a result, he is instead detained under § 1226.

In response, Respondents insist that Petitioner is detained under § 1225(b)(2) for the same reasons relied upon by the respondents in several other cases currently pending before the Court of Appeals of the Sixth Circuit. *See* [R. 5, p. 4]; [R. 5-2 (Appellant's Opening Brief in *Lopez-Campos v. Raycraft*)]. The Court understands that the respondents rely on the BIA's recent interpretation of § 1225 in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). In that decision, the BIA ruled that § 1225 and its mandatory detention scheme applies to "all applicants for admission, even those . . . who have entered without admission or inspection and have been residing in the United States for years without lawful status." *Walizada*, 2025 WL 3551972, at *7 (quoting *Hurtado*, 29 I. & N. Dec. at 220) (internal quotation marks omitted). Thus, from the best the Court can tell, Respondents argue that, regardless of the fact that Petitioner has resided in the United States and was arrested in its interior, Petitioner is detained under § 1225 because he was never admitted to the United States, and he is therefore necessarily an "applicant for admission." *See generally* [R. 5-2]. The Respondents also argue that Petitioner was and continues to be an "arriving alien" and as such, he was and continues to be an "applicant for admission" subject to mandatory detention. [R. 5, pp. 4–6].

As noted, the Court also ordered the parties to file supplemental briefs addressing Petitioner's parole status and certain statutory provisions, including 8 U.S.C. § 1182(d)(5)(A). [R. 12]. That provision expressly provides that, when parole expires or terminates, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case

shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

In his supplemental brief, Petitioner acknowledges that his own parole expired prior to his arrest, but he argues that the language of this statutory provision "does *not* state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien' or that they must be detained." [R. 18, p. 9 (quoting *Qasemi v. Frances*, No. 25-cv-10029, 2025 WL 3654098, at *20 (S.D.N.Y. Dec. 17, 2025)) (internal quotation marks omitted)]. "Instead," Petitioner argues, "it provides that a parolee be returned to the *custody* of DHS in that the freedoms associated with parole status expire, such as work authorization and eligibility for certain Federal public benefits." *Id.* (emphasis added). Thus, he argues, the "natural expiration of his parole did not revert him back to" his status as an applicant for admission and an arriving alien under § 1225. *Id.* at 5. Instead, when his parole expired (in either April or October 2025), he "had already arrived in the United States, had already been placed in [Section] 240 removal proceedings, and had filed an asylum application." *Id.* As such, he argues, he falls under § 1226.

In their supplemental brief, Respondents argue that Petitioner's prior parole "did not alter [his] status as an excluded alien or otherwise bring him 'within the United States.'" [R. 17, p. 9 (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 186 (1958))]. Instead, Respondents argue, under 8 U.S.C. § 1182(d)(5)(A), Petitioner was "returned to the custody from which he was paroled," meaning custody under § 1225, and he must be "dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). Essentially, then, the respondents argue that Petitioner was initially classified as an applicant for admission under § 1125, and he *remains* an applicant for admission under § 1125. As noted above, the respondents argue that any such applicant for admission is necessarily "seeking admission" and is

therefore subject to mandatory detention under § 1225. *See generally* [R. 5-2].

Thus, the parties' primary dispute is whether Petitioner is *currently* an arriving alien and/or applicant for admission within the meaning of § 1225(b)(2)(A), such that he is subject to mandatory detention, or whether he now falls under § 1226(a)'s more general provisions after having been paroled and living in the United States for approximately two years. Under the specific facts of this case, that question turns on whether Petitioner—who concedes he entered the country as an arriving alien and an applicant for admission and was, at that time, subject to the mandatory detention provisions of § 1225—reverted to that status when his parole expired. To resolve this question, the Court first turns to the statutory text.

### 3.  Statutory Interpretation

When interpreting a statute, "the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)); *see also King v. Burwell*, 576 U.S. 473, 486 (2015). Each word in the statute should be read in line with "its ordinary, contemporary, common meaning." *Kentucky v. Biden*, 23 F.4th at 603 (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997)). Often, however, "the 'meaning—or ambiguity— of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). Accordingly, "[t]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101, (2012). All in all, courts must "use every tool at their disposal to determine the best reading of the statute." *Loper Bright*, 603 U.S. at 400.

The Court first turns to the plain language of § 1182(d)(5)(A). That provision states, in full:

> The Secretary of Homeland Security may, except [in certain scenarios not relevant here], in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served *the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States*.

8 U.S.C. § 1182(d)(5)(A) (emphasis added).

It is clear from this language that upon the expiration of an alien's parole, he reverts back to the "custody" he held at the time he was paroled. And the common meaning of the term "custody" does not require, nor is it limited to, physical control or detention. Instead, Merriam-Webster defines "custody" as the "immediate charge and *control* (as over a ward or a suspect) exercised by a person or an authority." *Custody*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/custody (last visited February 13, 2026) (emphasis added); *see also Qasemi*, 2025 WL 3654098, at *10 ("[Custody] concerns any status under which a person or thing is under the 'care and control of [another] for inspection, preservation, or security.'" (quoting *Black's Law Dictionary* 390 (7th ed. 1999)). Thus, the plain language of the § 1182(d)(5)(A) mandates that, upon the termination or expiration of an alien's parole, that alien is returned to the status they held at the time of their parole, that is, the status under which they were subject to the "immediate charge and control" of DHS.

The plain language of the statute also makes clear that parole "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Thus, under the above-quoted language of § 1182(d)(5)(A), "[a]liens who are paroled are [] subject to the 'entry fiction' in which they are legally considered as if they remained at the border throughout and after their parole until removal or credible fear proceedings conclude." *Faqirzada v. Rokosky*, No. 25-16639 (MAS), 2026 WL

63614, at *2 (D.N.J. Jan 8, 2026) (citations omitted); *see also Arcos Tasigchana v. Soto*, No. 25-18252 (ZNQ), 2026 WL 266170, *2 (D.N.J. Feb. 2, 2026). Once the government, in its discretion, terminates an alien's parole or it otherwise expires, that alien must "return or be returned to the custody from which he was paroled and [be detained] . . . as any other applicant for admission," meaning he or she must "return to the form and type of detention from which he was initially paroled." *Faqirzada*, 2026 WL 63614, at *2 (quoting 8 USC § 1182(d)(5)(A) (internal quotation marks omitted); *see also Arcos Tasigchana*, 2026 WL 266170, at *2; *see generally Jennings*, 583 U.S. at 287–88, 300–03. Stated another way, the alien is treated as though they "remained at the border throughout and after their parole." *Faqirzada*, 2026 WL 63614, at *2.

This interpretation of the statutory text is supported by the INA's implementing regulations. True, courts today need not defer to an agency's regulations and interpretations when interpreting statutory provisions, but they are still permitted to consider such regulations and interpretations for guidance. *See Loper Bright*, 603 U.S. at 394. Here, the Court considers the regulations and finds that they support the Court's statutory analysis. For example, 8 C.F.R. § 212.5(e)(2)(i) states that, upon termination of parole, a noncitizen "shall be restored to the *status* that he or she had *at the time of parole*." 8 C.F.R. § 212.5(e)(2)(i). In other contexts, courts have interpreted the term "status," as used in this regulation, to refer to a noncitizens' legal or immigration status. *Samirah v. Holder*, 627 F.3d 652, 657 (7th Cir. 2010) (finding that the noncitizen returned to his status as applicant for an adjustment of status when his parole terminated); *Julce v. Smith*, 2018 WL 1083734 (D. Mass. Feb. 27, 2018) ("Once parole expired, his *legal status* reverted to an alien subject to a final order of removal with a pending petition for review before the First Circuit.") (emphasis added). The "time of parole" "occurs when the alien

-21-

is actually paroled into the country by immigration officials at a port of entry." *Ibragimov*, 476 F.3d at 136.

Accordingly, based on the plain language of the statute, and as reflected in the relevant regulations, the Court finds that the statute's mandate that an alien "shall forthwith return or be returned to the custody from which he was paroled" upon the expiration of parole requires him to return to the immigration *status* he held at the time he was paroled into the country at a port of entry. Other courts have ruled similarly. *See De La Torre v. Lyons*, No. 1:25-cv-01516-DJC-CSK, 2025 WL 3704448, at *2 (E.D. Cal. Dec. 22, 2025) (finding that "[t]he termination of [the petitioner's] parole means that he was 'returned to the custody from which he was paroled,'" and as such, "the relevant statutory basis for his detention is section 1225(b)(2)"); *Villanueva v. Chestnut*, 1:25-cv-01218-KES-HBK (HC), 2025 WL 2996559, at *3–4 (E.D. Cal. Oct. 24, 2025) (ruling similarly in determining that the petitioner was unlikely to succeed on the merits of her claim that she fell within the scope of § 1226); *Zamirov v. Olson*, No. 25 CV 6540, 2025 WL 2618030, at *3 (N.D. Ill. Aug. 29, 2025) (explaining that the petitioner's "parole expired on April 26, 2024," and under § 1182(d)(5)(A), "this reverted him back to the status of an arriving alien and applicant for admission," and as such, he could be "designated for expedited removal under § 1225(b)(1)(A)(iii)(II)"); *see also Faqirzada*, 2026 WL 63614, at *2; *Arcos Tasigchana*, 2026 WL 266170, at *2.

The Court must therefore determine Petitioner's immigration status at the time he was granted parole. Under the unique facts of this case, this question is not difficult to answer. There is no dispute that Petitioner was paroled into the country by immigration officials at a port of entry on October 4, 2023. On that date, by his own admission, his status was that of an arriving alien and an applicant for admission arriving at a port of entry, and he was actively seeking admission

at that time. *See* [R. 1, pp. 1, 4]; [R. 18, p. 2].  Again, Petitioner does not dispute this. Moreover, this conclusion finds support in the statutory text. Section 1182(d)(5)(A) permits the Secretary of Homeland Security to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien *applying for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A). This indicates that, at the time a noncitizen is paroled, they are an alien actively "applying for admission." For all of these reasons, Petitioner was subject to detention under § 1225 at the time he was paroled into the country on October 4, 2023. And again, he does not dispute this.

As to his status today, as the foregoing authority makes clear, upon the expiration of his parole, he reverted back to his prior immigration status that he held at the time of parole, that is, an applicant for admission actively seeking admission. As such, the relevant statutory basis for his detention is § 1225, not § 1226. Section 1225 "does not include any exception that permits the government to release detained aliens on bond." *Buentrostro-Mendez*, 166 F.4th at 499. Petitioner is therefore not entitled to a bond hearing and could not be released on bond, as the IJ correctly noted.

In reaching this conclusion, the Court acknowledges that the arrest warrant issued on November 20, 2025 by DHS expressly invokes the authority of § 1226. [R. 5-1]; *see also* [R. 9, p. 13]. This and other courts have considered this fact in other cases when determining whether a petitioner was subject to detention under § 1225 or § 1226. *See, e.g. Martinez-Elvir v. Olson*, 807 F. Supp. 3d 725, 739 (W.D. Ky. 2025); *Qasemi*, 2025 WL 3654098, at *12. But in the present case, it is clear that Petitioner was initially detained under § 1225(b)(2) then subsequently released on parole. Given these circumstances, the authority outlined above, including the plain language of the statute, clearly provides that, upon the expiration of his parole, Petitioner must be returned

to the custody, or immigration status, that he held at the time of his parole. The fact that DHS may have issued an unnecessary warrant, perhaps out of an abundance of caution, does not alter the Court's analysis.

For these reasons, the Court will deny Petitioner's habeas petition to the extent he argues that the respondents violated the INA by detaining him under § 1225 and failing to provide a bond hearing.

### D.  Due Process Claim (Count One)

In Count One of his petition, Petitioner argues that that he has been detained in violation of the Fifth Amendment's Due Process Clause. [R. 1, p. 8]. Specifically, he argues that he "has received no due process and has not been afforded any adequate procedural protections"; "[h]e was unlawfully detained without any legal basis and no warrant"; and "[h]e continues to be held without a full and fair bond hearing before a neutral arbiter." *Id.* The Court has already explained that the statutory framework authorizing his continued detention is § 1225, and as a result, a warrant was not required for his detention (although, an arrest warrant *was* issued, [R. 5-1]), and he is not entitled to a bond hearing. As such, the Court will deny his petition to the extent he argues that Respondents violated the Fifth Amendment by detaining him without a legal basis and without a warrant, and by failing to provide him with a bond hearing.[7]

## IV.    CONCLUSION

For the reasons set forth above, the Court will deny Petitioner's petition for writ of habeas corpus. Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

---

[7] Moreover, even if Petitioner is detained under § 1226 and is thereby entitled to a bond hearing, the record reflects that he received such a hearing, and the IJ found, in the alternative, that Petitioner was not entitled to bond. *See* [R. 1-5].

-25-

1.  Petitioner's Petition for Writ of Habeas Corpus, [**R. 1**], is **DENIED**.

This the 6th day of April, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

-25-